**EXHIBIT A**

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sonya L. Smallets, Esq. (SBN226190)<br>MINNIS & SMALLETS LLP<br>369 Pine Street, Suite 500<br>San Francisco, California 94104<br>TELEPHONE NO.: (415) 551-0885    FAX NO.: (415) 683-7157<br>ATTORNEY FOR *(Name):* Plaintiff LUISA PINZON | **F I L E D**<br>Superior Court of California<br>County of San Francisco<br><br>**NOV 1 8 2014**<br><br>**CLERK OF THE COURT**<br>By: _David W. Yuen_<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

CASE NAME:
LUISA PINZON v. SIMPSON GUMPERTZ & HEGER INC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER:<br>**CGC-14-542769** |
|---|---|---|
| ✓ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

   **Auto Tort**
   ☐ Auto (22)
   ☐ Uninsured motorist (46)

   **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
   ☐ Asbestos (04)
   ☐ Product liability (24)
   ☐ Medical malpractice (45)
   ☐ Other PI/PD/WD (23)

   **Non-PI/PD/WD (Other) Tort**
   ☐ Business tort/unfair business practice (07)
   ☐ Civil rights (08)
   ☐ Defamation (13)
   ☐ Fraud (16)
   ☐ Intellectual property (19)
   ☐ Professional negligence (25)
   ☐ Other non-PI/PD/WD tort (35)

   **Employment**
   ☐ Wrongful termination (36)
   ✓ Other employment (15)

   **Contract**
   ☐ Breach of contract/warranty (06)
   ☐ Rule 3.740 collections (09)
   ☐ Other collections (09)
   ☐ Insurance coverage (18)
   ☐ Other contract (37)

   **Real Property**
   ☐ Eminent domain/Inverse condemnation (14)
   ☐ Wrongful eviction (33)
   ☐ Other real property (26)

   **Unlawful Detainer**
   ☐ Commercial (31)
   ☐ Residential (32)
   ☐ Drugs (38)

   **Judicial Review**
   ☐ Asset forfeiture (05)
   ☐ Petition re: arbitration award (11)
   ☐ Writ of mandate (02)
   ☐ Other judicial review (39)

   **Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
   ☐ Antitrust/Trade regulation (03)
   ☐ Construction defect (10)
   ☐ Mass tort (40)
   ☐ Securities litigation (28)
   ☐ Environmental/Toxic tort (30)
   ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

   **Enforcement of Judgment**
   ☐ Enforcement of judgment (20)

   **Miscellaneous Civil Complaint**
   ☐ RICO (27)
   ☐ Other complaint (not specified above) (42)

   **Miscellaneous Civil Petition**
   ☐ Partnership and corporate governance (21)
   ☐ Other petition (not specified above) (43)

2. This case ☐ is ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☐ monetary  b. ✓ nonmonetary; declaratory or injunctive relief  c. ✓ punitive
4. Number of causes of action *(specify):*  10
5. This case ☐ is ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: November 17, 2014

Sonya L. Smallets, Esq.
_____
(TYPE OR PRINT NAME)

▶ _Sonya Smallets_
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SIMPSON GUMPERTZ & HEGER INC.;  & DOES 1 THROUGH 10, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

LUISA PINZON

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| San Francisco Superior Court 400 McAllister St., San Francisco, CA 94102 | CGC-14-542769 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Sonya L. Smallets Esq., Minnis & Smallets LLP, 369 Pine St., #500 San Francisco, CA 94104 (415) 551-0885

| DATE: *(Fecha)* **NOV 1 8 2014** | CLERK OF THE COURT | Clerk, by *(Secretario)* | , Deputy *(Adjunto)* |
|---|---|---|---|

DAVID W. YUEN

*For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

**Page 1 of 1**

| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 *www.courtinfo.ca.gov* |
|---|---|---|

Sonya L. Smallets, Esq. (SBN226190)
Aaron P. Minnis, Esq. (SBN202935)
Sean D. McHenry, Esq. (SBN284175)
MINNIS & SMALLETS LLP
369 Pine Street, Suite 500
San Francisco, California 94104
T: (415) 551-0885
F: (415) 683-7157
E: sonya@minnisandsmallets.com

Attorneys for Plaintiff
LUISA PINZON

**F I L E D**
Superior Court of California
County of San Francisco

NOV 18 2014

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO—UNLIMITED JURISDICTION

| | |
|---|---|
| LUISA PINZON,<br><br>PLAINTIFF,<br><br>VS.<br><br>SIMPSON GUMPERTZ & HEGER INC.; & DOES 1 THROUGH 10, INCLUSIVE,<br><br>DEFENDANTS. | Case No. **CGC-14-542769**<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) Interference with CRFA Protected Rights<br>(2) Retaliation in Violation of CFRA<br>(3) Interference with FMLA Protected Rights<br>(4) Retaliation in Violation of FMLA<br>(5) Disability Discrimination in Violation of FEHA<br>(6) Failure to Provide Reasonable Accommodation in Violation of FEHA<br>(7) Failure to Engage in Interactive Process in Violation of FEHA<br>(8) Retaliation in Violation of FEHA<br>(9) Wrongful Termination in Violation of Public Policy<br>(10) Failure to Prevent Harassment<br><br>Jury Trial Demanded |

COMES NOW PLAINTIFF LUISA PINZON for causes of action, and alleges as follows:

-1-

## I. ALLEGATIONS

1.     PLAINTIFF LUISA PINZON ("PINZON" or "PLAINTIFF"), who resides in San Francisco County, is a former employee of DEFENDANT SIMPSON GUMPERTZ & HEGER INC.  At all relevant times herein, PLAINTIFF worked for DEFENDANT SIMPSON GUMPERTZ & HEGER INC. in San Francisco County.

1.     DEFENDANT SIMPSON GUMPERTZ & HEGER INC. ("SGH" or "DEFENDANT") is an engineering firm that designs, investigates, and rehabilitates structures and building enclosures.  DEFENDANT SGH is incorporated in the state of Massachusetts.  At all relevant times herein, SGH was PLAINTIFF's employer.

2.     The true names and capacities, whether individual, corporate or otherwise, of DOES 1 through 10 are at this time unknown to PLAINTIFF, who therefore sues said DEFENDANTS by such fictitious names. PLAINTIFF will ask leave to amend this complaint to reflect their true names and capacities when the same have been ascertained.  PLAINTIFF is informed and believes, and thereon alleges, that each of said DEFENDANTS is respon-sible, jointly and severally, for the events and injuries described herein and caused damages thereby as alleged herein.

3.     PLAINTIFF is informed and believes, and thereon alleges, that at all times mentioned herein each and every co-DEFENDANT was and is the joint employer, predecessor-in-interest, successor-in-interest, agent, counselor, employee, servant, partner, franchisee and/or joint venturer of each of other co-DEFENDANT, and in doing the actions hereinafter mentioned, was and/or is acting within the scope of its authority within such agency, employment, counseling, service, partnership, franchise and/or joint venture or single enterprise, and with the permission and consent of each co-DEFENDANT.  PLAINTIFF alleges that each of said DEFENDANTS is

-2-

1  responsible, jointly and severally, for the events and injuries described
2  herein and caused damages thereby to PLAINTIFF as alleged herein.

3      4.      PINZON began working for SGH in September of 2006, first as a
4  temporary receptionist, then as a receptionist, and then as a
5  receptionist/administrative assistant.

6      5.      PINZON performed well in these positions.  She received good
7  performance evaluations and positive comments regarding, among other
8  strengths, her professionalism, teamwork, and interactions with others.

9      6.      Shortly after PINZON joined SGH, she became friendly with one
10  of her co-workers and began a sexual relationship with him.  PINZON soon
11  decided that their relationship was a mistake and told him that she was no
12  longer interested in being involved with him.  The co-worker wanted to
13  continue to have a relationship with PINZON.  He alternated between
14  pressing PINZON to resume their sexual relationship and, when she refused,
15  treating her rudely and unprofessionally.

16      7.      In December of 2006, PINZON complained to her then
17  supervisor about her co-worker's unprofessional conduct, but her supervisor
18  told her that she needed to patch things up and be friends with him again.

19      8.      PINZON remained unwilling to have a personal relationship with
20  her co-worker, but continued to attempt to a have a professional one.  He,
21  however, remained unwilling to treat PINZON as a professional colleague,
22  and continued to alternate between trying to convince PINZON to have a
23  sexual relationship with him and treating her rudely and unprofessionally
24  when she indicated her unwillingness to do so.

25      9.      PINZON complained to her supervisor about her co-worker's
26  conduct on multiple occasions.  Her supervisor agreed to talk to her co-
27  worker about his conduct, but nothing changed.

28  ///

-3-

COMPLAINT FOR DAMAGES

1       10.    In November of 2009, PINZON attended an anti-harassment
2   training conducted by the Director of Human Resources for SGH.  During this
3   training, PINZON realized that her co-worker's conduct was harassment.

4       11.    After the training, PINZON approached the Director of Human
5   Resources and told her that she was being harassed by her co-worker and
6   asked her if they could schedule a time to talk about the situation.  PINZON
7   told the Director of Human Resources about her co-worker's conduct and
8   that he made her uncomfortable.  In particular, PINZON emphasized that
9   when he sat at her desk to cover for her while she was at lunch, he read her
10  emails.

11      12.    The Director of Human Resources told PINZON that she was
12  aware of the co-worker's behavior, because PINZON's supervisor had
13  previously brought it to the attention of Human Resources.

14      13.    The Director of Human Resources agreed to speak to the co-
15  worker.  After she did so, she told PINZON that she did not believe that he
16  had violated any of SGH's policies, but that he was given a warning and told
17  that he needed to follow SGH's anti-harassment policies.  She told PINZON
18  that she would talk to PINZON's supervisor about making changes to reduce
19  the co-worker's interactions with PINZON, but no changes were made at that
20  time.

21      14.    In early 2010, unrelated changes in the workplace meant that
22  the co-worker was no longer assigned to cover PINZON's responsibilities
23  while she was on lunch.  This drastically reduced the number of time that
24  she had to interact with him, and greatly improved her working
25  environment, although he continued to be rude and unprofessional toward
26  her whenever they did have to interact.

27      15.    On several occasions during 2010, PINZON tried to explain to
28  her supervisor exactly how uncomfortable interacting with the co-worker

-4-

1  who had harassed her made her, but he refused to take PINZON's concerns
2  seriously.  In fact, he ignored PINZON's concerns, asking her co-worker to
3  cover for her when she took vacation time or a sick day, thereby giving her
4  co-worker access to her email.

5  16.   Finally, in the fall of 2010, another administrative assistant -
6  with whom PINZON had discussed how much it upset her to have her co-
7  worker sit at her desk and go through her things while she was out– was
8  able to convince PINZON's supervisor to stop having him cover for her when
9  she was away from work.

10  17.   PINZON thought the issue had been resolved, until her
11  supervisor and SGH's Corporate Administrative Manager ("Manager"),
12  scheduled a meeting with PINZON in mid-August of 2012 in a fishbowl-style
13  conference room in the office.  Her supervisor began the meeting by telling
14  PINZON that they had decided that her co-worker was going to be covering
15  all of PINZON's breaks and lunches.  PINZON told them that she was
16  uncomfortable with this, but they told her that she had no choice.

17  18.   The Manager claimed that the co-worker needed to cover for
18  PINZON so that she could attend meetings with the other administrative
19  assistants.  PINZON requested that they demote her to receptionist instead
20  of having her co-worker cover for her, but the Manager refused.  The
21  Manager told PINZON that there were no other options and that she would
22  either have to accept him covering for her or look for another job.

23  19.   PINZON asked the Manager if she was telling her that she would
24  lose her job if she did not allow the person who had harassed her for two
25  years to cover for her.  The Manager claimed that PINZON had
26  misunderstood her, but did not change her statement that PINZON had no
27  choice but to allow her co-worker to cover for her or lose her job.
28  ///

-5-

1    20.    By this point in time, a few minutes into their conversation,
2  PINZON was becoming concerned that she was going to start crying.  She
3  did not want to do this, particularly in the middle of a very public conference
4  room, where colleagues heading to and from the bathroom or to lunch could
5  easily see and hear her.  She asked that the conversation be continued at a
6  later time in a more private location, but the Manager insisted that they
7  needed to call Human Resources.

8    21.    As instructed, PINZON remained in the room, and the Manager
9  called the Director of Human Resources.  PINZON told the Director of Human
10 Resources that the Manager had told her that she had no choice but to
11 accept her co-worker covering for her.  The Director of Human Resources
12 told PINZON that she agreed with the Manager.

13    22.    The Manager and PINZON's supervisor then claimed that the
14 issue was PINZON's lack of professionalism.  However, when PINZON
15 pointed out that her supervisor had repeatedly complimented her on her
16 professionalism in the past and asked him to describe a time that she had
17 been unprofessional, the only example that he could point to was an office
18 lunch during which PINZON had discreetly asked a fellow administrative
19 assistant to switch seats with her so that she did not have to sit next to the
20 co-worker who had harassed her.

21    23.    PINZON pointed out that it was unreasonable for him to claim
22 that she was unprofessional for preferring not to sit next to the person who
23 had harassed her, and reminded him that she had never objected to
24 attending meetings at which he was present.  PINZON reiterated that she
25 was simply asking that her harasser not be allowed to be in her personal
26 workspace.  She offered several alternatives to having him do this.  The
27 Director of Human Resources, however, left the call without addressing
28 PINZON's concerns.

-6-

1    24.    The Manager then claimed that the purpose of the meeting was
2  to discuss PINZON advancing at the company and to ensure that, if she were
3  to be promoted, she would be able to work with her co-worker.  PINZON
4  expressed skepticism at this statement, as the Manager had begun the
5  meeting by threatening termination if PINZON was unwilling to work more
6  closely with her harasser, and first mentioned the possibility of promotion
7  many minutes into the meeting.  The Manager continued to insist that the
8  issue was PINZON's ability to work professionally with her harasser if she
9  were promoted, but, despite repeated requests by PINZON, neither she nor
10  her supervisor were able to identify a single instance in which PINZON's
11  reasonable desire to avoid unnecessary contact with her harasser had
12  interfered with her ability to perform her job duties.  The meeting ended
13  shortly thereafter.  Later that day, her supervisor repeatedly apologized to
14  PINZON for the meeting and his role in it.

15    25.    The following day, PINZON set up a meeting with SGH's Chief
16  Financial Officer ("CFO"), who was in charge of administration, facilities, and
17  Human Resources.  PINZON told him about her meeting.  She also told him
18  that she had been harassed by her co-worker and that she felt
19  uncomfortable having him sit at her desk to cover her while she was on
20  lunch and breaks.  The CFO admitted that he was aware of the harassment.
21  PINZON asked him to make sure that the Principals of SGH were aware of
22  her co-worker's harassment before insisting that he cover for her.  PINZON
23  also asked the CFO if she could be demoted in order to avoid having to have
24  her co-worker cover for her.  PINZON expected that he would follow up with
25  her regarding the concerns she had raised, but she heard nothing further
26  from him.

27    26.    The following week, PINZON had several conversations and
28  meetings with the Director of Human Resources.  PINZON reiterated that

-7-

1  having her harasser cover for her made her feel extremely uncomfortable.
2  During one meeting, PINZON told the Director of Human Resources that she
3  suffers from depression.

4      27.   The Director of Human Resources emailed PINZON a letter,
5  dated September 4, 2012, summarizing her understanding of the situation.
6  In this letter, she admitted that, in November of 2009, PINZON had
7  complained to her that another employee's treatment of her was making her
8  uncomfortable and that PINZON had concerns about having that employee
9  cover for her, but stated that SGH saw no reason to preclude the harasser
10  from covering for her. She also acknowledged that PINZON had informed
11  her that PINZON suffers from depression.

12      28.   In response, PINZON asked her to send such personal and
13  confidential communications to her personal email address, as anyone who
14  covered for her at the reception desk - including her harasser - had access
15  to her work email. The Director of Human Resources claimed that she would
16  look into changing this, but as far as PINZON was aware, nothing was ever
17  done.

18      29.   This email exchange should have brought PINZON's concerns
19  regarding having her co-worker cover for her brought into stark relief, as
20  sitting at PINZON's desk gave him access to PINZON's emails, including
21  emails such as this one disclosing her disability status.

22      30.   On October 2, 2012, PINZON was called into a meeting with her
23  supervisor and the Head of the San Francisco office. The Head of the San
24  Francisco Office gave PINZON a written warning, criticizing her for the
25  manner in which she communicated with her supervisor during the previous
26  several weeks, as she had raised her concerns about having her harasser
27  cover for her. PINZON again attempted to explain her concerns with how
28  ///

-8-

1 she was being treated, but he had no interest in hearing her concerns. He
2 told her that that facilities was going to cover for reception.

3    31.   Shortly thereafter, PINZON's health care providers placed her on
4 a medical leave. PINZON informed SGH's Corporate Senior Human
5 Resources Specialist – Benefits of this in an email dated October 4, 2012.
6 SGH informed PINZON that she was eligible for FMLA leave and instructed
7 PINZON to have her health care provider complete a medical certification,
8 which she did.

9    32.   SGH approved PINZON's request for medical leave through
10 November 18, 2012.

11    33.   In November of 2012, PINZON submitted another note from her
12 doctor, placing her on medical leave through Friday, January 4, 2013. SGH
13 granted PINZON's request and placed her on FMLA-protected leave through
14 Monday, January 7, 2013.

15    34.   While PINZON was on medical leave, she continued to attempt to
16 resolve her concerns regarding being forced to be in closer contact with her
17 harasser by contacting SGH's Chief Operations Officer ("COO"). During their
18 conversation, PINZON told the COO about her co-worker's harassment of her
19 and explained that interacting with him made her very uncomfortable. She
20 told the COO that SGH's insistence that her harasser cover for her had
21 pushed her into a depression serious enough to necessitate a medical leave.
22 PINZON asked the COO to look into the situation, to see if there was some
23 way that she could not be forced to choose between having her harasser sit
24 at her desk or losing her job. He promised to look into the situation, but, as
25 far as PINZON was made aware, did not do so.

26    35.   A few weeks later, on November 30, 2013, the Director of
27 Human Resources sent PINZON an email, informing her that her harasser
28 ///

-9-

1  was now covering the receptionist's morning and afternoon breaks.  PINZON
2  understood this to be a permanent change.

3      36.    PINZON attempted to return to work on January 7, 2013.
4  Immediately upon arriving at the office, she was called into a meeting with
5  her supervisor and the Director of Human Resources.  The Director of
6  Human Resources reiterated that her harasser was going to be covering the
7  reception desk while the receptionist took breaks.  PINZON acknowledged
8  that she understood that this would be the case.  The Director of Human
9  Resources asked PINZON if she had anything else to say about the matter,
10  but PINZON said that she had already said everything that she could say on
11  the subject.  At no time did PINZON refuse to return to her position.

12      37.    PINZON then asked if she could speak to the Director of Human
13  Resources alone.  Once her supervisor left the office, PINZON asked the
14  Director of Human Resources if she was aware of why she had been on
15  leave.  The Director of Human Resources claimed not to know why PINZON
16  had been on leave.  This surprised PINZON, as she had previously told her
17  that she suffered from depression, which she had acknowledged in writing,
18  and she had specifically told the COO that she was on medical leave for
19  depression caused by the prospect of having her harasser cover for her.

20      38.    PINZON again told the Director of Human Resources that she
21  suffered from depression and that the prospect of having her harasser cover
22  for her had caused her to become severely depressed.  PINZON asked her
23  for an accommodation.  The Director of Human Resources refused to
24  consider PINZON's request.

25      39.    The Director of Human Resources then terminated PINZON's
26  employment, providing her with paperwork that had been signed by the CFO
27  the previous week.

28  ///

-10-

1    40.    PLAINTIFF timely filed an administrative charge with the DFEH
2  and obtained her right to sue.

3    41.    DEFENDANT's actions were undertaken for improper purposes as
4  alleged above and were willful, oppressive and in conscious disregard of
5  PLAINTIFF's rights, and were designed and intended to cause and did, in
6  fact, cause PLAINTIFF to suffer severe emotional distress, pain and suffering,
7  and substantial economic damage and, therefore, justify the awarding of
8  exemplary and punitive damages.

9    42.    The above allegations are incorporated by reference in each and
10  every cause of action stated below.

11                        **II. CAUSES OF ACTION**
12                        **FIRST CAUSE OF ACTION**
13                  **(Interference with CFRA Protected Rights)**

14    43.    DEFENDANT is an employer covered by CFRA.

15    44.    PLAINTIFF suffers from a serious health condition that made her
16  unable to perform the functions of her job.

17    45.    PLAINTIFF was eligible for medical leave under the California
18  Family Rights Act.

19    46.    PLAINTIFF notified DEFENDANT of her serious health condition
20  and her need for medical leave.

21    47.    DEFENDANT granted PLAINTIFF's request for medical leave.

22    48.    DEFENDANT refused to allow PLAINTIFF to return to work
23  following her medical leave and terminated her.

24    49.    PLAINTIFF was harmed.

25    50.    DEFENDANT's conduct was a substantial factor in causing
26  PLAINTIFF's harm.

27  ///

28  ///

-11-

 

## SECOND CAUSE OF ACTION

### (Retaliation in Violation of CFRA)

51.  PLAINTIFF was eligible for medical leave under the California Family Rights Act.

52.  PLAINTIFF requested and took a medical leave.

53.  DEFENDANT discharged Plaintiff.

54.  PLAINTIFF's request to take a medical leave and her taking of the medical leave motivated DEFENDANT's decision to discharge PLAINTIFF.

55.  PLAITIFF was harmed.

56.  DEFENDANT's retaliatory conduct was a substantial factor in causing PLAINTIFF's harm.

## THIRD CAUSE OF ACTION

### (Interference with FMLA Protected Rights)

57.  DEFENDANT is an employer covered by the FMLA.

58.  PLAINTIFF suffers from a serious health condition that made her unable to perform the functions of her job.

59.  PLAINTIFF was eligible for medical leave under the Family and Medical Leave Act.

60.  PLAINTIFF notified DEFENDANT of her serious health condition and her need for medical leave.

61.  DEFENDANT granted PLAINTIFF's request for medical leave.

62.  DEFENDANT refused to allow PLAINTIFF to return to work following her medical leave and terminated her.

63.  PLAINTIFF was harmed.

64.  DEFENDANT's conduct was a substantial factor in causing PLAINTIFF's harm.

///

///

-12-

 

**FOURTH CAUSE OF ACTION**

**(Retaliation in Violation of FMLA)**

65.   PLAINTIFF was eligible for medical leave under the Family Medical Leave Act.

66.   PLAINTIFF requested and took a medical leave.

67.   DEFENDANT discharged PLAINTIFF.

68.   PLAINTIFF's request to take a medical leave and her taking of the medical leave was a negative factor in DEFENDANT's decision to discharge PLAINTIFF.

69.   PLAINTIFF was harmed.

70.   DEFENDANT's retaliatory conduct was a substantial factor in causing PLAINTIFF's harm.

**FIFTH CAUSE OF ACTION**

**(Disability Discrimination in Violation of FEHA)**

71.   DEFENDANT is an employer within the meaning of FEHA.

72.   PLAINTIFF was an employee of DEFENDANT.

73.   PLAINTIFF has a mental condition that limits her in a major life activity, including working.

74.   DEFENDANT knew of PLAINTIFF's disability.

75.   PLAINTIFF was able to perform the essential functions of her job with reasonable accommodations for her condition.

76.   DEFENDANT terminated PLAINTIFF.

77.   PLAINTIFF's disability and her need for reasonable accommodations was a substantial motivating reason in DEFENDANT's decision to discharge PLAINTIFF.

78.   PLAINTIFF was harmed.

79.   DEFENDANT's conduct was a substantial factor in causing PLAINTIFF's harm.

-13-

1

## SIXTH CAUSE OF ACTION

### (Failure to Provide Reasonable Accommodation in Violation of FEHA)

80.   DEFENDANT is an employer within the meaning of FEHA.

81.   PLAINTIFF was an employee of DEFENDANT.

82.   DEFENDANT knew that PLAINTIFF has a mental condition that limits her in a major life activity, including working.

83.   PLAINTIFF was able to perform the essential functions of her job with reasonable accommodations for her condition.

84.   DEFENDANT failed to provide reasonable accommodations for PLAINTIFF's disability.

85.   PLAINTIFF was harmed.

86.   DEFENDANT'S failure to provide reasonable accommodations was substantial factor in causing PLAINTIFF's harm.

## SEVENTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process in Violation of FEHA)

87.   DEFENDANT is an employer within the meaning of FEHA.

88.   PLAINTIFF was an employee of DEFENDANT.

89.   PLAINTIFF has a mental disability that was known to DEFENDANT.

90.   PLAINTIFF requested that DEFENDANT make reasonable accommodations of her disability, so that she would be able to perform the essential functions of her job.

91.   PLAINTIFF was willing to participate in an interactive process to determine whether reasonable accommodations could be made.

92.   DEFENDANT failed to participate in a timely good faith interactive process.

93.   PLAINTIFF was harmed.

///

-14-

COMPLAINT FOR DAMAGES

 

1    94.    DEFENDANT'S failure to engage in a good faith interactive
2  process was a substantial factor in causing PLAINTIFF's harm.

3                        **EIGHTH CAUSE OF ACTION**

4                    **(Retaliation in Violation of FEHA)**

5    95.    DEFENDANT is an employer within the meaning of FEHA.

6    96.    PLAINTIFF was an employee of DEFENDANT.

7    97.    PLAINTIFF opposed discriminatory activity that she reasonably
8  believed to be unlawful under FEHA.

9    98.    DEFENDANT terminated PLAINTIFF.

10    99.    PLAINTIFF's opposition to activity she reasonably believed to be
11  discriminatory was the motivating reason for DEFENDANT's decision to
12  terminate PLAINTIFF.

13    100.  PLAINTIFF was harmed.

14                        **NINTH CAUSE OF ACTION**

15          **(Wrongful Termination in Violation of Public Policy)**

16    101.  PLAINTIFF was employed by DEFENDANT.

17    102.  DEFENDANT terminated PLAINTIFF because she exercised her
18  rights under CFRA and FMLA to request and take medical leave, under FEHA
19  to request accommodations for a mental disability, and under FEHA to
20  oppose discriminatory activity.

21    103.  Said termination violated fundamental public policy, as reflected
22  in FEHA, CFRA, and FMLA.

23    104.  The termination caused PLAINTIFF harm.

24  ///
25  ///
26  ///
27  ///
28  ///

                                    -15-



## TENTH CAUSE OF ACTION

### (Failure to Prevent Harassment)

105. PLAINTIFF was an employee of DEFENDANT.

106. PLAINTIFF was subject to harassment because of her sex and retaliation because she opposed DEFENDANT's unlawful discriminatory practices.

107. DEFENDANT failed to take reasonable steps necessary to prevent the discrimination, harassment, and retaliation.

108. PLAINTIFF was harmed.

109. DEFENDANT's failure to take reasonable steps to prevent the discrimination, harassment, and retaliation was a substantial factor in causing PLAINTIFF's harm.

## III. PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF seeks, to the extent allowed by law, economic damages, non-economic damages for pain, suffering and emotional distress, exemplary damages, liquidated damages in an amount equal to the sum of the economic damages and legal interest, expert witness fees, equitable relief, injunctive relief, legal interest, statutory attorney's fees, and costs of suit. PLAINTIFF also seeks such other relief as the court deems just.

**DATED:** November 17, 2014

MINNIS & SMALLETS LLP

by: _Sonya Smallets_

SONYA L. SMALLETS, ESQ.
Attorneys for Plaintiff
LUISA PINZON

-16-

**EXHIBIT B**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Sonya L. Smallets, 226190<br>Minnis & Smallets LLP<br>369 Pine Street Suite 500<br>San Francisco, CA  94104<br>TELEPHONE NO.: (415) 551-0885<br>ATTORNEY FOR *(Name):* Plaintiff | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF | |
|---|---|
| Superior Court of California, San Francisco County<br>400 McAllister Street, Civil<br>San Francisco, CA  94102-0000 | |

| PLAINTIFF/PETITIONER: Luisa Pinzon | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Simpson Gumpertz & Heger Inc. | CGC-14-542769 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>Pinzon |
|---|---|

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.

2. I served copies of: Summons, Complaint, Notice To Plaintiff, ADR Package, Early Settlement Program, Mediation Services

**By Fax**

3. a. Party served: Simpson Gumpertz & Heger Inc.

   b. Person Served: Carolyn L. Searls - Person authorized to accept service of process

4. Address where the party was served:  100 Pine Street Suite 1600
   San Francisco, CA  94111

5. I served the party
   b. **by substituted service.** On (date): 11/19/2014       at (time): 12:40 PM  I left the documents listed in item 2 with or
   in the presence of: Rudy Ramirez H,M,40yrs,5'8,155lbs,Bl

      (1) **(business)**  a person at least 18 years of age apparently in charge at the office or usual place of business of
      the person to be served. I informed him or her of the general nature of the papers.

      (4) A declaration of mailing is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   c. on behalf of:

   Simpson Gumpertz & Heger Inc.

   under:       CCP 416.10 (corporation)

7. **Person who served papers**
   a. Name:      Nate Freed
   b. Address:   One Legal - 194-Marin
                 504 Redwood Blvd #223
                 Novato, CA  94947
   c. Telephone number: 415-491-0606
   d. The fee for service was:  $ 86.65
   e. I am:
      (3) registered California process server.
          (i) Employee or independent contractor.
          (ii) Registration No. 2012-0001180
          (iii) County SAN FRANCISCO

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 11/24/2014

Nate Freed
(NAME OF PERSON WHO SERVED PAPERS)                              (SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California POS-010<br>[Rev. Jan 1, 2007]      **PROOF OF SERVICE OF SUMMONS**      Code of Civil Procedure, § 417.10

OL# 7366996

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):*<br>Sonya L. Smallets, 226190<br>Minnis & Smallets LLP<br>369 Pine Street Suite 500<br>San Francisco, CA 94104 | TELEPHONE NO.:<br>(415) 551-0885 | FOR COURT USE ONLY |
|---|---|---|
| ATTORNEY FOR *(Name):* Plaintiff | Ref. No. or File No.<br>Pinzon | |

Insert name of court, judicial district or branch court, if any:

Superior Court of California, San Francisco County
400 McAllister Street, Civil
San Francisco, CA 94102-0000

PLAINTIFF:

Luisa Pinzon

DEFENDANT:

Simpson Gumpertz & Heger Inc.

| PROOF OF SERVICE BY MAIL | | | | CASE NUMBER:<br>CGC-14-542769 |
|---|---|---|---|---|

I am a citizen of the United States, over the age of 18 and not a party to the within action. My business address is 504 Redwood Blvd #223, Novato, CA 94947.

On 11/21/2014, after substituted service under section CCP 415.20(a) or 415.20(b) or FRCP 4(e)(2)(B) or FRCP 4(h)(1)(B) was made, I mailed copies of the:

## By Fax

Summons, Complaint, Notice To Plaintiff, ADR Package, Early Settlement Program, Mediation Services

to the person to be served at the place where the copies were left by placing a true copy thereof enclosed in a sealed envelope, with First Class postage thereon fully prepaid, in the United States Mail at Los Angeles, CA, California, addressed as follows:

Simpson Gumpertz & Heger Inc.
Carolyn L. Searls
100 Pine Street, Suite 1600
San Francisco, CA 94111

I am readily familiar with the firm's practice for collection and processing of documents for mailing. Under that practice, it would be deposited within the United States Postal Service, on that same day, with postage thereon fully prepaid, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

$ 86.65

Hephzipah Afu
One Legal - 194-Marin
504 Redwood Blvd #223
Novato, CA 94947

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration was executed on 11/24/2014 at Los Angeles, California.

Hephzipah Afu

OL# 7366996

**EXHIBIT C**

1  SARAH E. ROBERSTON #142439
   CASEY L. WILLIAMS #280324
2  DONAHUE FITZGERALD LLP
   1999 Harrison Street, 25th Floor
3  Oakland, California  94612
   Telephone: (510) 451-3300
4  Facsimile: (510) 451-1527
   Email: srobertson@donahue.com
5         cwilliams@donahue.com

6  Attorneys for Defendant
   SIMPSON GUMPERTZ & HEGER, INC.

7

8                     SUPERIOR COURT OF CALIFORNIA

9          COUNTY OF SAN FRANCISCO – UNLIMITED JURISDICTION

10 LUISA PINZON,                        Case No.: CGC-14-542769

11          Plaintiff,                  **ANSWER TO COMPLAINT BY
                                        SIMPSON GUMPERTZ & HEGER,**
12      vs.                             **INC.**

13 SIMPSON GUMPERTZ & HEGER, INC.,
   and DOES 1-10,
14                                      Complaint Filed: November 18, 2014
            Defendants.
15

16

17      Defendant Simpson Gumpertz & Heger, Inc. ("Defendant"), on its own behalf and on

18 behalf of no other defendant, hereby answers the unverified Complaint filed by Plaintiff Luisa

19 Pinzon herein ("Plaintiff") as follows:

20                          **GENERAL DENIAL**

21      Pursuant to Code of Civil Procedure section 431.30(d), Defendant generally denies each

22 and every one of the allegations of the Complaint, and further denies that Plaintiff has been

23 damaged in the amount alleged, or in any amount at all, by reason of the matters alleged

24 therein.

25                       **AFFIRMATIVE DEFENSES**

26                       **FIRST AFFIRMATIVE DEFENSE
                         (Failure to State a Cause of Action)**

27      Defendant alleges that the Complaint and each of the purported causes of action or

28 claims set forth therein fail to state facts sufficient to constitute a cause of action against

Donahue Fitzgerald
LLP
Attorneys At Law
Oakland

                                          1.
                     DEFENDANT'S ANSWER TO COMPLAINT
12/15/2014 (27815.00001) #607429.1

Defendant upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Mitigation)

Defendant alleges that Plaintiff has failed to mitigate the damages alleged in the Complaint and in each cause of action contained therein, and thus is barred from recovering such damages, or such damages must be reduced by virtue of the failure to mitigate.

### THIRD AFFIRMATIVE DEFENSE
#### (Failure to Exhaust Administrative Remedies)

Defendant alleges that each of the purported causes of action for relief in the Complaint under the Family and Medical Leave Act and the Fair Employment and Housing Act, including the California Family Rights Act therein, are barred due to Plaintiff's failure to exhaust her administrative remedies in a timely manner.

### FOURTH AFFIRMATIVE DEFENSE
#### (No Disability)

Defendant alleges that the Fifth, Sixth, and Seventh Causes of Action are barred because Plaintiff did not have a "disability" as defined by the statute.

### FIFTH AFFIRMATIVE DEFENSE
#### (Mixed Motives – Discrimination)

Defendant alleges that any claims for damages, backpay, or an order of reinstatement are barred because even if it is found that Defendant's actions were motivated by both discriminatory/retaliatory and nondiscriminatory/nonretaliatory reasons, which Defendant denies, the nondiscriminatory/nonretaliatory reasons alone would have induced it to make the same decision.

### SIXTH AFFIRMATIVE DEFENSE
#### (Worker's Compensation)

Defendant alleges that that Plaintiffs purported causes of action or claims for relief are preempted, in whole or in part, by the exclusive remedy provisions of the California Workers' Compensation Act, California Labor Code  Sections 3600, *et seq.*

Donahue Fitzgerald
LLP
Attorneys At Law
Oakland

2.
DEFENDANT'S ANSWER TO COMPLAINT
12/15/2014 (27815.00001) #607429.1

### SEVENTH AFFIRMATIVE DEFENSE
#### (After-Acquired Evidence)

Defendant alleges that Plaintiff's purported causes of action or claims for relief in the Complaint and/or alleged damages are barred and/or limited, in whole or in part, by the doctrine of after-acquired evidence.

### EIGHTH AFFIRMATIVE DEFENSE
#### (Legitimate Business Reasons)

Defendant alleges that Plaintiff's causes of action for wrongful termination, discrimination, and/or retaliation are barred because any actions taken by Defendant with respect to Plaintiff's employment were done in good faith and were based on legitimate, non-discriminatory and non-retaliatory reasons.

### NINTH AFFIRMATIVE DEFENSE
#### (Health or Safety)

Defendant alleges that it had no obligation to reasonably accommodate Plaintiff because Plaintiff could not perform the essential functions of her position in a manner that would not endanger her health or safety or the health safety of others, even with any reasonable accommodation.

### TENTH AFFIRMATIVE DEFENSE
#### (Inability to Perform)

Defendant alleges that Plaintiff's purported causes of action or claims for relief in the Complaint are barred because Plaintiff could not perform the essential duties and functions of her position, with or without a reasonable accommodation.

### ELEVENTH AFFIRMATIVE DEFENSE
#### (Undue Hardship)

Defendant alleges that, assuming, arguendo, that Plaintiff was a qualified individual with a disability, any requested accommodation of Plaintiff's disability would have imposed an undue hardship on Defendant.

Donahue Fitzgerald
LLP
Attorneys At Law
Oakland

3.
DEFENDANT'S ANSWER TO COMPLAINT
12/15/2014 (27815.00001) #607429.1

## TWELFTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

Defendant alleges that the Complaint and each of the purported causes of action set forth therein are barred, in whole or in part, by the applicable statutes of limitation, including, but not limited to, Code of Civil Procedure Sections 335.1, 337, 338, 339(1), 340(a), 340(b), 343, Government Code Sections 12654, 12960, and 12965, 29 U.S.C. § 2617(c), and any applicable provisions of federal law.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Defendant Engaged In Interactive Process)

Defendant alleges that Plaintiff's claims are barred because Defendant complied with its obligations, if any, to engage in an interactive process to determine whether the medical limitations arising from Plaintiff's claimed disability could be reasonably accommodated.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Good Faith)

Defendant alleges that its conduct with respect to Plaintiff was at all times reasonable, in good faith, based upon good cause, and motivated solely by legitimate considerations.

WHEREFORE, Defendant prays for judgment in its favor as follows:

1.      That Plaintiffs take nothing by reason of the Complaint;

2.      For attorneys' fees;

3.      For costs of suit therein; and

4.      For such other and further relief as this Court deems just and proper.

Dated: December 19, 2014          DONAHUE FITZGERALD LLP

                                  By _____
                                     Sarah E. Robertson
                                     Attorneys for Defendant
                                     SIMPSON GUMPERTZ & HEGER, INC.

Donahue Fitzgerald
LLP
Attorneys At Law
Oakland

4.
DEFENDANT'S ANSWER TO COMPLAINT
12/15/2014 (27815.00001) #607429.1

1

**PROOF OF SERVICE - C.C.P. §§1010.6 - 1013a**

2       I, the undersigned, declare: I am employed in the County of Alameda, State of

3  California.  I am over the age of 18 and not a party to the within action.  I am employed by

4  Donahue Fitzgerald LLP, located at 1999 Harrison Street, 25th Floor, Oakland, CA 94612.  I

5  am readily familiar with the firm's business practice of processing of documents for service.

6       On **December 19, 2014**, I served a true and correct copy of the following document(s):

7

**DEFENDANT'S ANSWER TO COMPLAINT**

8

9  on all the following interested parties, by causing service by the method indicated below:

**Sonya L. Smallets, Esq.**
10  **Aaron P. Minnis, Esq.**
**Sean D. McHenry, Esq.**
11  **MINNIS & SMALLETS LLP**
**Telephone: (415) 551-0885**
12  **Facsimile: (415) 683-7157**
13  *Attorneys for Plaintiff Luisa Pinzon*

| | |
|---|---|
| **X** | U.S. Mail - By placing a copy of said document(s) in a sealed envelope addressed as stated above, with postage thereon fully prepaid, and depositing said envelope with the U.S. Postal Service, following thers firm's business practices. |
| | Overnight Delivery - By placing a copy of said document(s) in a sealed pre-paid overnight envelope or package and depositing said envelope or package today in a box or other facility regularly maintained by the express service carrier, following thers firm's business practices. |
| | Personal Service - By personally serving today said document(s) to the attorney or party as stated above. |
| | Facsimile - By placing a true copy thereof into a facsimile machine to the fax number stated above, as agreed upon in writing, by the parties. |

23       I declare under the penalty of perjury under laws of the State of California that the

24  foregoing is true and correct.  Executed on **December 19, 2014**, at Oakland, California.

25

26                    Katia Tsvetkova

27

28

5.

DEFENDANT'S ANSWER TO COMPLAINT

12/15/2014 (27815.00001) #607429.1